IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



UNITED STATES OF AMERICA

v.                                    No. 4:17-MJ-_____

DAVID WILLIAMS    (1)

## CRIMINAL COMPLAINT

I, Thomas R. Cook, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Dallas Division, duly appointed and acting according to law.

2. I have been a Special Agent since August 2014. Prior to becoming a Special Agent, I worked for two and a half years as an Intelligence Analyst for the FBI on counterterrorism investigations. I am currently assigned to the Criminal Branch of the Dallas Division and am responsible for conducting investigations of health care fraud, to include fraud against government programs such as Medicare and Medicaid as well as fraud against private insurance programs. I have received training in such areas as electronic and physical surveillance, interviewing witnesses and defendants, financial analysis, collection of evidence, and the use of confidential informants. I have also received training regarding computers and digital evidence.

**Criminal Complaint -- Page 1**

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause to show that **David Roy Williams** has committed violations of 18 U.S.C. § 1347 (Health Care Fraud) and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### A. Background On Williams

4. At all materials times to this complaint, **Williams** was a resident of Fort Worth, Texas and Mansfield, Texas, and had a Ph.D. in kinesiology (the study of the mechanics of body movements).

5. Williams provided "personal fitness training" to his clients. **Williams** was a former collegiate wrestler and power-lifter. **Williams** was not a medical doctor and was not licensed with the Texas Medical Board as a physician. **Williams** was also not licensed as a therapist with the State of Texas.

### B. Background on Program and Definitions

6. United HealthCare Services, Inc., Aetna, Inc., and Cigna were insurance companies, which provided health insurance to individuals. Each company was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

7. In order to bill these insurance companies and health care benefit programs for services performed, an individual had to be a "health care provider," as that term is defined at 45 CFR § 160.103, and had to register with the Centers for Medicare and Medicaid Services ("CMS") in order to obtain a National Provider Identifier ("NPI").

8. A "health care provider" was defined in 45 CFR § 160.103, in relevant part, as a provider of "medical or health services." That phrase – "medical or health services" was defined, in 42 U.S.C. § 1395x(s), and did not include "personal fitness training."

9. Given the volume of providers, CMS does not investigate or verify whether an individual is actually a health care provider before issuing an NPI number. Instead, CMS relies on the honesty of applicants.

10. Current Procedural Terminology ("CPT") codes (typically in the form of a five digit number) are used by medical professionals to provide a uniform language that will accurately identify and describe services, supplies or procedures, and to provide an effective means for reliable nationwide communication among providers, patients, and third parties. CPT codes represent specific medical procedures and services that may be provided to beneficiaries/recipients and to individuals enrolled in private health care benefit programs. The American Medical Association develops, maintains, and distributes these codes, primarily through CPT manuals. In order for a health care provider to bill United HealthCare Services, Inc., Aetna, Inc., and Cigna, a health care provider had to utilize the appropriate CPT codes in submitting bills.

11. Evaluations and Management CPT Codes are used for the evaluation and management of the patient by the physician or other licensed provider, such as a physician assistant or nurse practitioner. Each Evaluation and Management Code requires that a physician or other licensed provider physically or remotely examine the patient. An Evaluation and Management Code may only be claimed for reimbursement if the patient is seen by a physician or licensed provider and that provider satisfies the elements of the claimed Evaluation and Management Code.

12. The relevant Evaluation and Management Code for this complaint is CPT code 99215, which, as defined in the CPT manuals, is an office or other outpatient visit for the evaluation and management of an established patient which requires at least two of the three key components: (1) a comprehensive history, (2) comprehensive examination, and (3) medical-decision making of high complexity. As the CPT manual indicates, services billed under this code "usually" related to problems of moderate to high severity. The CPT manual further suggested that physicians typically spend 40 minutes face-to face with patient and/or family when billing for this code.

13. The other relevant code for this Complaint is CPT code 97110, which is a therapeutic procedure performed in a manner of effecting change through the application of clinical skills and/or services that attempt to improve function. A physician or a therapist is required to have direct (one on one) patient contact to bill under this code.

14. In order to bill these insurance companies (United HealthCare Services, Inc., Aetna, Inc., and Cigna), a health care provided had to complete a "health insurance claim form, otherwise known as Form 1500. On the form, the health care provider had to identify the patient, identifiers for the patient, the date of service, and the CPT code for the service, procedure or supply that had been provided and was being billed. The health care provider then had to sign the form and certify that the statements on the form were true, accurate, and complete and that the health care provider had familiarized themselves with all applicable laws, regulations, and program instructions.

### C. Scheme to Defraud

15. Between in or about November 2012 and in or about August 2017, the defendant, **David Roy Williams,** engaged in a scheme to defraud insurance companies by submitting over $25 million in false and fraudulent claims for medical services.

16. Between in or about November 2012 and in or about August 2017, **Williams** operated a company called "Kinesiology Specialists," among others, and advertised on his website, getfitwithdave.com. **Williams** offered "in-home fitness training and therapy" through his company and website.

17. **Williams** identified himself as "Dr. Dave" and stated that he served clients in "most of Texas, Las Vegas, Denver, Tucson, Seattle, and Orlando." Through his website, **Williams** told potential clients that he was "accepting most health care insurance coverage plans."

18. In order to bill insurance companies for his services, **Williams** registered as a health care provider with the Centers for Medicare and Medicaid Services ("CMS") in an effort to obtain a National Provider Identifier ("NPI").

19. In completing the application, **Williams** falsely certified, in writing and by execution of his signature, that he was a "health care provider" as that term is defined at 45 CFR § 160.103.

20. **Williams** enrolled as a health care provider at least nineteen times under different names or variations of his name and his company names. This was done in an effort to divert attention away from his fraudulent billing. In each application, **Williams** falsely certified that he was a "health care provider."

21. **Williams** billed the insurance companies as if he were a medical physician and as if he had provided care requiring "medical decision making of high complexity." Williams used Form 1500s to submit his billing and signed those form as the physician or supplier. As **Williams** knew, the victim insurance companies would not have paid **Williams** had they known that he was not a medical physician and was not providing care requiring "medical decision making of high complexity."

22. Instead, **Williams**, provided fitness and exercise training to his clients.

23. **Williams** recruited potential clients through the use of flyers, the internet, and word-of-mouth. A significant portion of his clients were employees or dependents of employees of Southwest Airlines.

24. Once recruited, **Williams** would typically meet with or speak with the new client over the phone and review their health history and goals for their planned fitness training. **Williams** would then typically assign a personal trainer to that individual. The personal trainer typically met with the client between one and three times a week for approximately one hour and provided fitness training. These trainings often took place in the client's home or in a local park.

25. **Williams** would then bill insurance companies for each training session using certain CPT codes. For example, **Williams** billed for services under CPT Code 99215 and 97110, even though those codes required the involvement and supervision of a physician. **Williams** was not a physician, a physician was not involved, and a physician did not supervise these interactions with clients.

26. Instead, **Williams** oversaw numerous individuals that worked for him as personal trainers. **Williams** would bill the work of these trainers under CPT Codes 99215 and 97110 as if a physician had performed, been involved in, or supervised the work, when, in fact, a physician had not.

27. In addition, on certain occasions, **Williams** billed for services that neither he nor his staff, ever provided.

28. For example, on or about November 24, 2014, **Williams** caused to be billed United Healthcare for services he allegedly provided to an individual, identified here as N.D., under CPT Code 97110 on October 20, 22, 24, 26, and 28, 2014. N.D. did not

receive any fitness training or other services by Williams or individuals who worked for **Williams** on these dates. Instead, N.D. began receiving fitness training on October 29, 2014, from a personal trainer assigned to N.D. by **Williams**. N.D. received this training in the personal trainer's garage. There was no physician or therapist involved in this training. I have observed many more examples of billing by **Williams** when no service was provided.

29. When alerted to these instances by his clients, **Williams** took no action to pay back or reimburse the insurance companies for the money he had improperly obtained.

30. As a larger example, between December 23, 2012, and February 5, 2015, **Williams** billed United HealthCare Services, Inc. at least $2.5 million using these codes, even though the work performed by **Williams** and his staff was not performed by a physician, did not involve a physician, and was not under the supervision of a physician.

31. In December 2015, **Williams** and United HealthCare Services, Inc. entered into a "Settlement Agreement" whereby **Williams** agreed to repay United HealthCare Services, Inc. $630,000.

32. Since the date that he entered into the Settlement Agreement with United HealthCare Services, Inc. (December 19, 2015) and after which he was clearly notified of his fraudulent billing, **Williams** continued to bill United HealthCare Services, Inc. for an

amount exceeding $13 million under different tax id numbers in an attempt to conceal the relationship between the billing and **Williams'** true identity.

33. United HealthCare Services, Inc. would not have paid any amounts to **Williams** for these claims if United HealthCare Services, Inc. knew it was **Williams** who was submitting the claims.

34. As another larger example, between January 11, 2011, and November 30, 2014, **Williams** billed Aetna for at least $900,000 using these codes, even though the work performed by **Williams** and his staff was not performed by a physician, did not involve a physician, and was not under the supervision of a physician.

35. In January 2015, Aetna informed **Williams** that Aetna had realized that **Williams** had improperly billed Aetna for these amounts. Aetna further informed **Williams** that it was their belief that **Williams** had engaged in a pattern of "abusive billing" and they had learned that **Williams** was not licensed with the Texas State Licensing Board, as required by Aetna's medical plans.

36. In January 2016, **Williams** and Aetna entered into a "Settlement Agreement and Release," whereby **Williams** agreed to repay Aetna $240,000. **Williams** also agreed not to bill Aetna "for any future claim unless he is licensed under applicable state law to provide the services billed and the claims conform to then current CPT and HCPC Code definitions."

37. Since the date that he entered into the Settlement Agreement and Release with Aetna (January 26 2016) and after which he was clearly notified of his fraudulent billing, **Williams** continued to bill Aetna for an amount exceeding $300,000 under different tax identifiers numbers in an attempt to conceal the relationship between the billing and **Williams'** true identity. Aetna would not have paid any amounts to **Williams** for these claims if Aetna knew it was **Williams** who was submitting the claims.

38. On or about May 16, 2017, federal agents approached **Williams** and explained that they were investigating fraud committed by **Williams**. Days later, **Williams** utilized a new NPI number under an entity called "Mansfield Orthopedic Associates" and then billed United HealthCare Services, Inc. through that company and NPI number for additional fraudulent billing.

39. Between in or about November 2012 and in or about August 2017, **Williams** was paid in excess of $3.9 million in relation to his fraudulent billing of United HealthCare Services, Inc., Aetna, Inc., and Cigna.

[remainder of page intentionally left blank]

## CONCLUSION

40. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that David Roy Williams committed the offense of Healthcare Fraud, in violation of 18 U.S.C. § 1347.

Respectfully submitted,

_____
Thomas R. Cook
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 10th day of October 2017 at 9:47 a.m./p.m. in Fort Worth, Texas.

_____
JEFFREY L. CURETON
United States Magistrate Judge